Delbert HILL, Appellant–Respondent,

v.

Sarah HILL, Appellee–Petitioner.

No. 65A01–0602–CV–76.

Court of Appeals of Indiana.

April 2, 2007.

Scott A. Funkhouser, Mt. Vernon, IN, Attorney for Appellant.

Beth Ann Folz, McFadin Higgins & Folz, Mt. Vernon, IN, Attorney for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

Delbert Hill ("Husband") appeals the trial court's property division in his dissolution proceedings with Sarah Hill ("Wife"). Husband argues that the trial court abused its discretion in failing to award him a greater share of the marital property. Finding that the trial court acted within its discretion in dividing the marital property, we affirm.

### Facts and Procedural History

Husband and Wife were married on November 22, 1989. During the marriage, Husband worked as a truck driver, and Wife largely stayed at home as a housewife and a mother of the couple's two children. Wife has a history of mental illness. She says that she has been diagnosed with bipolar disorder, and she takes Lexapro, Zyprexa, and Topamax for a "Recurrent, Major Depressive Disorder." Appellant's App. p. 129. She was institutionalized once before she married Husband and at least three times while she was married to Husband. Most recently, Wife lived in a group home for approximately two-and-a-half years, from November 2002 until May 2005. According to Husband, the longest period Wife ever worked during the marriage was three weeks.

On April 15, 2004, Wife filed a petition for dissolution of the marriage. At the final hearing, held on March 2 and June 20, 2005, there was extensive testimony regarding Wife's past struggles with mental illness from Husband's brother, Ira Hill, from Wife's friend, Donna Bratcher, and from Husband and Wife themselves. There was also testimony that outside of two short periods of employment in December 2004 and June 2005, Wife has remained unemployed. At the time of the

final hearing, Husband, who is retired, had a monthly income of approximately $5000.00, including a pension payment of $2600.00, Social Security benefits, and rental income. Wife's income, on the other hand, was $376.00, which she describes as "a dependent benefit from [Husband's] Social Security retirement benefit." Appellee's Br. p. 2.

There was also testimony concerning cash that Husband was allegedly keeping in a briefcase. Ira Hill testified that Husband came to him shortly after Wife filed for dissolution and told him that he was keeping $40,000.00 cash in a briefcase. Husband admitted telling his brother that but testified that he did not actually have the money and "was joking with him," Tr. p. 58, and "just told him that," Tr. p. 287.

Finally, there was conflicting testimony regarding real estate in Florida. Husband first stated that he merely helped his son from a previous marriage to buy property on Merritt Island and Pepper Avenue by giving him the down payment and signing for the loan. *See* Tr. p. 7. However, he also testified that he himself bought one parcel for $54,000.00 and the other parcel for $47,000.00 or $48,000.00. *See id.* at 263. Furthermore, Wife testified that Husband purchased the Florida real estate during the marriage, *see id.* at 224, and Ira Hill testified that Husband told him that he "owned two houses" in Florida, *see id.* at 33. In addition, Wife submitted into evidence two quitclaim deeds that purport to transfer the Florida real estate from Husband to his son from a previous marriage but that were not recorded until April 26, 2004.

The trial court issued its Final Decree on January 23, 2006. The Final Decree included the following provision:

> While almost all of the Parties' assets, including [Husband's] pension, were accumulated through [Husband's] efforts and almost all non-mortgage marital indebtedness was incurred as a result of [Wife's] bi-polar condition, due to the length of the marriage and [Husband's] efforts to secrete marital assets as well as [Husband's] greater ability to earn income, the Court finds that an equal division of assets and liabilities is equitable.

Appellant's App. p. 34. We summarize the trial court's division of the assets and liabilities as follows:

Husband receives:

1. Vines Road property ($190,000.00).
2. 416 Daisyfield Road ($50,000.00).
3. 420 Daisyfield Road ($22,000.00).
4. 411 Lincoln Park ($14,000.00).
5. 1608 Ogilby Road ($45,000.00).
6. Merritt Island (Florida) property ($18,000.00).
7. Pepper Avenue (Florida) property ($6,000.00).[1]
8. Cash in briefcase ($40,000.00).
9. Recreational vehicle trailer ($4000.00).
10. Bank accounts ($5726.45)
11. Listed personal property ($10,750.00).
12. Miscellaneous personal property ($3925.00).

   Total: $409,401.45

Husband pays:

---

**1.** We acknowledge that the total value of the real estate in this list exceeds the "net real estate" value of $228,000.00 reached by the trial court. *See* Appellant's App. p. 34–35. This is because the trial court failed to include the full value of the some of the real estate in the marital pot. *See id.* at 34. As discussed further in Section I, *infra,* it is well settled in Indiana that all marital property goes into the marital pot for division. *Beard v. Beard,* 758 N.E.2d 1019, 1025 (Ind.Ct.App.2001), *trans. denied.*

1. Marital debt (including mortgage on Vines Road property) ($90,661.68).
2. Cash to Wife ($100,146.66).

   Total: $190,808.34

Wife receives:

1. Van ($40,000.00)
2. Arctic Cat four wheeler ($3800.00).
3. Personal property ($1300.00).[2]
4. Other Personal property ($2,595.00).
5. Payment from Husband ($100,-146.66).

   Total: $147,841.66

*Id.* at 30–35. In a separate section of the Final Decree, the trial court ordered an equal division of Husband's pension and ordered Wife to create a Qualified Domestic Relations Order establishing such an arrangement.[3]

Husband now appeals.

**Discussion and Decision**

On appeal, Husband raises several issues, which we restate as whether the trial court abused its discretion in dividing the marital pot. Before reaching this issue, we address Husband's related contention that the trial court erred in including certain items in the marital pot.

**I. Marital Pot**

Initially, Husband argues that the trial court erred in including several items, specifically, his pension and certain pieces of real estate, in the marital pot. It

is well-established in Indiana that all marital property goes into the marital pot for division, whether it was owned by either spouse prior to the marriage, acquired by either spouse after the marriage and prior to final separation of the parties, or acquired by their joint efforts. Ind.Code § 31–15–7–4(a); *Beard v. Beard,* 758 N.E.2d 1019, 1025 (Ind.Ct.App.2001), *trans. denied.* This "one-pot" theory insures that all assets are subject to the trial court's power to divide and award. *Thompson v. Thompson,* 811 N.E.2d 888, 914 (Ind.Ct.App.2004), *trans. denied.* While the trial court may ultimately determine that a particular asset should be awarded solely to one spouse, it must first include the asset in its consideration of the marital estate to be divided. *Id.* Husband urges, however, that some of the items disposed of by the trial court in its Final Decree were not "property," or at least not "marital property," and should not have been part of the marital pot.

Husband first contends that his pension should not be included in the marital pot.[4] Specifically, he asserts that because he is not entitled to receive payment of his pension on demand, but rather must wait for monthly payments, the pension is not "property." We disagree. Indiana Code § 31–9–2–98(b) provides, in pertinent part:

---

2. There is no mention in the trial court's Final Decree of a distribution to Wife of personal property worth $1300.00. We reached this number by subtracting the value of the van ($40,000.00) and the Arctic Cat four wheeler ($3800.00) from a personal property award of $45,100.00. *See* Appellant's App. p. 32.

3. The trial court also ordered an equal division of family memorabilia but did not assign dollar values.

4. We note that both parties analyze the trial court's division of Husband's pension as an

award of spousal maintenance based on Wife's disability. However, "characterizing an award as maintenance does not make it so." *Benjamin v. Benjamin,* 798 N.E.2d 881, 888 (Ind.Ct.App.2003). Here, Wife did not ask for a maintenance award in her petition for dissolution, at the final hearing, or in her proposed order, and the trial court did not label the pension division as a maintenance award in its Final Decree. We will not treat the division of Husband's pension as a maintenance award simply because the parties on appeal do so.

"Property", for purposes of IC 31–15 [regarding dissolution], IC 31–16, and IC 31–17, means all the assets of either party or both parties, including:

(1) a present right to withdraw pension or retirement benefits[.]

As Husband is currently receiving payments from his pension plan, he clearly has "a present right to withdraw pension or retirement benefits" under subsection (b)(1). Therefore, Husband's pension constitutes "property" for purposes of Indiana Code § 31–9–2–98(b) and was properly included in the marital pot.[5]

■ Next, Husband challenges the trial court's treatment of the 411 Lincoln Park, 416 Daisyfield Road, 420 Daisyfield Road, and 1608 Ogilby Road real estate. He notes that he acquired the 411 Lincoln Park and 416 Daisyfield Road properties before the marriage and that the 420 Daisyfield Road and 1608 Ogilby Road properties were acquired during the marriage but with funds that Husband brought into the marriage. Husband contends that he "should have become the sole owner" of these properties "with no value assigned to him" for purposes of the division of marital assets. Appellant's Br. p. 14. We read this as an argument that these properties should not have been included in the marital pot. We reiterate that *all* marital property goes into the marital pot for division, even if it was owned by one spouse prior to the marriage or purchased with funds that one spouse brought into the marriage. *See* I.C. § 31–15–7–4(a); *Beard,* 758 N.E.2d at 1025; *see also Thompson,* 811 N.E.2d at 914. These properties were properly included in the marital pot.

■ Husband also urges that the Merritt Island and Pepper Avenue real estate in Florida are not marital property and therefore should not have been included in the marital pot because he has never owned the property. Husband did state at the final hearing that he only helped his son from a previous marriage to buy the property by giving him the down payment and signing for the loan. *See* Tr. p. 7. However, he contradicted himself when he testified that he himself bought one parcel for $54,000.00 and the other parcel for $47,000.00 or $48,000.00. *See id.* at 263. Furthermore, Wife testified that the Florida real estate was purchased during the marriage, *see id.* at 224, and Ira Hill testified that Husband told him that he "owned two houses" in Florida, *see id.* at 33. Finally, though Husband apparently intended to transfer the Florida real estate to his son from a previous marriage, the deeds evidencing the transfer were not recorded until April 26, 2004, eleven days *after* Wife filed for dissolution. This evidence is sufficient to support the trial court's inclusion of the Florida real estate in the marital pot.

## II. Division of Marital Pot

Beyond the *makeup* of the marital pot, Husband also challenges the trial court's *division* of the marital pot. Specifically, he argues that "an equal division of … the real estate overall was not just and reasonable" and that "ordering [Husband] to pay all of the debts was erroneous according to the statutory factors." Ap-

---

**5.** In support of his position to the contrary, Husband directs us to this Court's opinion in *Savage v. Savage,* 176 Ind.App. 89, 374 N.E.2d 536 (1978). We wrote *Savage* less than two years before the Indiana General Assembly enacted Indiana Code § 31–1–11.5–2(d), the predecessor to Indiana Code § 31–9–2–98(b).

*See* P.L. 180–1980, § 1. Insofar as *Savage* supports Husband's contention that his pension should not be treated as property, we find that it has been superceded by this statute. Indeed, it appears that our legislature may have written this statute in response to *Savage.*

pellant's Br. p. 17. He also contends that "the [trial] court's 50/50 split of ... the property overall is erroneous" and that he is "entitled to a higher percentage of all of the property." *Id.* at 12–13, 15–16. Initially, we make two observations.

▮ First, to the extent that Husband attacks the trial court's disposition of specific pieces of real estate and the marital debt, we emphasize that on appeal, we will consider the trial court's division of the pot as a whole, not item by item. *Perkins v. Harding,* 836 N.E.2d 295, 299 (Ind.Ct.App. 2005). Viewed in isolation, the trial court's order that Husband pay all of the marital debt, for example, may seem unfair, but the same order may be completely fair when viewed alongside a distribution of marital assets that is favorable to Husband.

Second, the trial court did not, as Husband contends, order a "50/50 split" of the marital property. It did state that "an equal division of assets and liabilities is equitable," Appellant's App. p. 34, and it did order an equal division of Husband's pension. Beyond the pension, however, the trial court awarded Husband assets worth $409,401.45 and ordered him to make payments of $190,808.34 ($90,661.68 for marital debts and $100,146.66 to Wife), for a final net distribution of $218,593.11. The trial court awarded Wife assets worth $47,695.00 and a payment from Husband in the amount of $100,146.66, for a final net distribution of $147,841.66. In addition to the equal split of Husband's pension, then, Husband received $218,593.11, and Wife received $147,841.66. Therefore, while the trial court said, "[A]n equal division of assets and liabilities is equitable," *id.,* its actual division of the assets and liabilities created a much different result.

One reason it may appear that the trial court ordered an equal division of the marital pot is that the trial court did not include the full value of the real estate in the marital pot. In calculating the value of the marital pot, the trial court subtracted the amount of Husband's "pre-marital assets" or "pre-marital funds" used to purchase certain real estate. As such, when, in its Final Decree, the trial court awarded a piece of real estate to Husband, it did not credit the full value of that property to Husband. For example, the trial court valued 416 Daisyfield Road at $50,000.00, found that Husband paid $18,000.00 in "pre-marital funds" for this property, and awarded it to Husband at a "marital value" of $32,000.00. In essence, Husband was only assigned $32,000.00 for a piece of real estate worth $50,000.00. The trial court is certainly entitled to reach such a result, as Indiana Code § 31–15–7–5 expressly authorizes courts to deviate from an equal division based on several factors, including "[t]he contribution of each spouse to the acquisition of the property[.]" But to construe such a division as "equal" is simply incorrect. Again, in Indiana, *all* marital property goes into the marital pot for division, even if it was purchased with funds that one spouse brought into the marriage. *See* I.C. § 31–15–7–4(a); *Beard,* 758 N.E.2d at 1025.

▮ We now address Husband's argument that he is "entitled to a higher percentage of all of the property." Appellant's Br. p. 13. The disposition of marital assets is within the sound discretion of the trial court. *Hatten v. Hatten,* 825 N.E.2d 791, 794 (Ind.Ct.App.2005), *trans. denied.* "When a party challenges the trial court's division of marital property, he must overcome a strong presumption that the court considered and complied with the applicable statute, and that presumption is one of the strongest presumptions applicable to our consideration on appeal." *Id.* (quotation omitted). When we review a claim that the trial court improperly divided

marital property, we must decide whether the trial court's decision constitutes an abuse of discretion, considering only the evidence most favorable to the trial court's disposition of the property, without reweighing the evidence or assessing the credibility of witnesses. *Id.* An abuse of discretion occurs if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court or if the trial court has misinterpreted the law or disregards evidence of factors listed in the controlling statute. *Id.* Although the facts and reasonable inferences might allow for a different conclusion, we will not substitute our judgment for that of the trial court. *Id.*

By statute, the trial court must divide the property of the parties in a just and reasonable manner, including property owned by either spouse prior to the marriage, acquired by either spouse after the marriage and prior to final separation of the parties, or acquired by their joint efforts. Ind.Code § 31–15–7–4(a). An equal division of marital property is presumed to be just and reasonable. Ind. Code § 31–15–7–5. This presumption may be rebutted by a party who presents relevant evidence, including evidence of the following factors:

(1) The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.

(2) The extent to which the property was acquired by each spouse:

(A) before the marriage; or

(B) through inheritance or gift.

(3) The economic circumstances of each spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell in the family residence for such periods as the court considers just to the spouse having custody of any children.

(4) The conduct of the parties during the marriage as related to the disposition or dissipation of their property.

(5) The earnings or earning ability of the parties as related to:

(A) a final division of property; and

(B) a final determination of the property rights of the parties.

*Id.*

■ We cannot say that the trial court abused its discretion in dividing the marital property. Inasmuch as Husband contends that "the [trial] court's 50/50 split of . . . the property overall is erroneous," Appellant's Br. p. 15–16, we noted above that the trial court actually ordered a net distribution of $218,593.11 for Husband plus half of the present value of his pension, while it ordered a net distribution of only $147,841.66 for Wife plus half of the present value of Husband's pension. And inasmuch as Husband contends that the trial court should have awarded him an even greater share of the marital pot, we conclude that the trial court adequately explained its reasons for refusing to do so. In determining the proper disposition of marital assets, trial courts are allowed to consider, among other factors, "[t]he economic circumstances of each spouse at the time the disposition of the property is to become effective," "[t]he conduct of the parties during the marriage as related to the disposition or dissipation of their property," and "[t]he earnings or earning ability of the parties[.]" I.C. § 31–15–7–5.

Here, in dividing the marital assets, the trial court cited the length of the marriage, Husband's efforts to secrete marital assets, and Husband's greater ability to earn income. Regarding Husband's greater ability to earn income, there was substantial evidence of Wife's history of mental illness and limited work experience. Fur-

thermore, the trial court's finding that Husband made efforts to secrete marital assets is supported by evidence that Husband had $40,000.00 in a briefcase shortly after Wife filed for dissolution. Husband testified that he was joking about that money, but the trial court found that it existed, and Husband does not challenge that finding on appeal. Therefore, Husband's claim that he was not seeking to secrete marital assets is a request for us to reweigh the evidence and judge the credibility of witnesses, which we will not do. Husband has failed to persuade us that the trial court abused its discretion in dividing the marital property.

Affirmed.

BAILEY, J., and BARNES, J., concur.